988 So.2d 644 (2008)
Edgar Calvin MARSHALL, III, Appellant,
v.
Sally Ann MARSHALL, Appellee.
Nos. 4D07-888, 4D07-2218, 4D07-3278, 4D07-4402.
District Court of Appeal of Florida, Fourth District.
June 18, 2008.
Order Granting Reconsideration August 27, 2008.
*646 Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach, and John D. Boykin of Casey, Ciklin, Lubitz, Martens & O'Connell, West Palm Beach, for appellant.
Lynn G. Waxman of Lynn G. Waxman, P.A., West Palm Beach, and Holly G. Gershon of The Haverman Law Firm, Boca Raton, for appellee.
MAY, J.
This appeal tasks this court with solving the equation for a marital domicile or residency. The husband appeals multiple orders entered in a dissolution proceeding, raising a solitary issue: whether the State of Florida has personal jurisdiction over him. The trial court answered the question in the affirmative. We answer the question partially in the negative and reverse.
The husband and wife were married and lived in Missouri, residing at the same address since 1983. The husband worked for, and currently is the president of, a family farming operation. The Missouri address appeared on the couple's federal income tax returns. The husband maintains an unrestricted Missouri driver's license and is registered to vote only in Missouri.
In February 2000 the couple, along with the wife's mother, purchased a condominium/co-operative in Boynton Beach, Florida. Some time after this purchase, the husband did not work for the family business for approximately a year and a half. For the first six months of that period, a son assisted him in looking for jobs and investment prospects in Florida, but the search was unsuccessful.
In May 2001 the husband applied for a homestead exemption on the Boynton Beach property. That application contained the following statement: "I hereby make application for the exemptions indicated and affirm that I do qualify for same under Florida Statutes. I am a permanent resident of the State of Florida and I own and occupy the property described above." The husband acknowledged the recited penalties for perjury.
In June 2001 the husband obtained a restricted Florida driver's license that was endorsed "Valid in Florida Only." The couple maintained an automobile at the local property, and had Florida bank accounts. At some point, the husband underwent elective medical treatment in Palm Beach County. The last time the husband was in Florida was February 2006.
The wife described their time in Florida as a month in February, up to two weeks each December, and sometimes up to two weeks in the summer. At times her husband would come to Boynton Beach by himself. One son described that his father visited every other month for a couple days, a month in February, and three to four weeks in December. Regardless of the description, the testimony revealed that the husband spent consistent, but limited, time in Florida. It was undisputed that while in Florida, the husband continued *647 to conduct his Missouri farming business on a daily basis.
Subsequently, the wife separated from the husband and took up residence at the Boynton Beach property. In September 2006 the wife filed dissolution proceedings in Palm Beach County. She alleged personal jurisdiction over the husband under section 48.193(1)(c) and/or (e), Florida Statutes (2006). In Count II, she alleged a claim for partition of the Boynton Beach property.
The husband filed a notice and an amended notice of special appearance, an affidavit, and a motion to quash service of process and dismiss the petition for lack of personal jurisdiction. The husband attested that he never declared or considered himself a permanent resident of Florida. When he came to Florida, he considered the trip a visit to their vacation property. He never spent more than a month at a time in Florida, and spent the vast majority of his time in Missouri.
The husband's counsel argued at the hearing that because the husband resided in Missouri and only vacationed in Florida, the trial court lacked personal jurisdiction over him. The Boynton Beach property was bought in 2001 for investment and vacation purposes. While the husband visited several times a year, he never stayed more than a month at a time because of his Missouri business obligations. Being the president of the family corporation, the husband did not plan on retiring to Florida in the near future.
In response, the wife argued that the key factor was the husband's 2001 application for a homestead exemption. That application indicated that the husband was a permanent resident of Florida and owned and occupied the Boynton Beach property. Without entering any evidence that the homestead exemption had actually been granted, the wife's counsel argued that the affidavit had been relied on by the tax appraiser for six years. The wife also argued that the trial court had jurisdiction to partition the property.
The trial court denied the motion to quash service and dismiss the petition concluding it had personal jurisdiction over the husband. The trial court found the husband had a valid Florida driver's license and intended to make Florida his home as he approached retirement. It also found that the Boynton Beach property was among the marital property issues to be resolved. The court found that the husband had sworn to be a permanent resident of Florida in his application for a homestead exemption.
The husband appealed the order denying his motion. He then moved to stay and transfer venue, which was also denied. As the trial court entered each order in the dissolution proceeding, the husband sequentially appealed the orders, raising the same issue in each case. This court granted the motion to consolidate the appeals.
Each appeal raises a single issue: whether the trial court erred in ruling that it had personal jurisdiction over the husband for any purpose other than dissolving the bonds of marriage and partitioning the Boynton Beach property. The husband argues that his wife had the burden to establish long-arm jurisdiction under subsection 48.193(1)(e), Florida Statutes (2006), and since the couple never maintained a matrimonial domicile in Florida and the husband never resided in Florida, she failed to meet that burden. The wife responds that because they maintained a matrimonial domicile in Florida and the husband formerly resided here, the trial court had personal jurisdiction over him.
We review the orders on appeal in this case de novo. Wendt v. Horowitz, 822 *648 So.2d 1252, 1256-57 (Fla.2002) (citing Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So.2d 582, 584 (Fla.2000)).
Under the divisible divorce concept, if the trial court has subject matter jurisdiction over a marriage, pursuant to sections 61.021 and 61.052, Florida Statutes, then it can dissolve the marital relationship. Orbe v. Orbe, 651 So.2d 1295, 1297 (Fla. 5th DCA 1995). But to adjudicate property disputes, support, and equitable distribution, the court must have personal jurisdiction over both parties. Id. Here, there is no dispute that the trial court had subject matter jurisdiction and, therefore, could dissolve the marriage. The issue of personal jurisdiction over the husband to resolve the other issues is not as simple.
Determining in personam jurisdiction is a two-prong analysis. First, the complaint must allege sufficient facts as to bring the action within the reach of Florida's long-arm statute, section 48.193, Florida Statutes. If it does, the defendant must have sufficient minimum contacts with this state to satisfy constitutional due process requirements. Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989) (quoting Unger v. Publisher Entry Serv. Inc., 513 So.2d 674, 675 (Fla. 5th DCA 1987)). We are able to resolve this issue under the first prong of the analysis.
The applicable provisions of the long-arm statute provide:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
. . .
(c) Owning, using, possessing, or holding a mortgage or other lien on any real property within this state.
. . .
(e) With respect to a proceeding for alimony, child support, or division of property in connection with an action to dissolve a marriage or with respect to an independent action for support of dependents, maintaining a matrimonial domicile in this state at the time of the commencement of this action, or if the defendant resided in this state preceding the commencement of the action, whether cohabiting during that time or not.
§ 48.193(1)(c), (e), Fla. Stat. (2006).
The wife pled and argued that the husband's ownership and possession of real property in Palm Beach County established personal jurisdiction under subsection 48.193(1)(c). We find that under this subsection there was personal jurisdiction over the husband solely as to the partition of the Boynton Beach property as alleged in Count II. See Bechtold v. Bechtold, 588 So.2d 321 (Fla. 4th DCA 1991) (reversing an order dismissing a complaint for partition that was attached to a petition for dissolution of marriage). However, this subsection did not provide for personal jurisdiction over the husband to resolve support, equitable distribution, and alimony issues because those claims did not arise out of the property's ownership. See Forrest v. Forrest, 839 So.2d 839 (Fla. 4th DCA 2003).
For Florida to have personal jurisdiction over the husband to resolve the various dissolution of marriage issues, the wife had to plead and prove either that the couple maintained a matrimonial domicile in Florida when she filed the petition for dissolution or that prior to filing the husband had *649 resided in Florida. See § 48.193(1)(e); Orbe, 651 So.2d at 1296.
The husband argues there are no facts to support that any place other than Missouri was the couple's matrimonial domicile. The wife argues that the husband's ownership and payment of taxes on the Boynton Beach property constituted the maintenance of a matrimonial domicile in Florida. We agree with the husband.
Domicile has been defined as:
In whatsoever place an individual has set up his household goods and made the chief seat of his affairs and interests, from which, without some special avocation, he has no intention of departing; from which, when he has departed, he is considered to be away from home, and to which, when he has returned, he is considered to have returned home.
Wade v. Wade, 93 Fla. 1004, 113 So. 374, 375 (1927) (citing Roman law as quoted in Smith v. Croom, 7 Fla. 81 (1857)). Factors evidencing domicile include: "income and other tax returns; homestead exemptions; voting registration; driver's license; place of business affairs; use of `residence'; and number of days in the state." Weiler v. Weiler, 861 So.2d 472, 477 n. 10 (Fla. 5th DCA 2003) (citing Christopher A. Tiso, Long-Arm Jurisdiction in Support and Divorce ActionsThe Unwary Beware, 76 Fla. B.J. 91 (2002)).
Since 1983 the couple resided in Missouri and returned there from each one of its absences from the state. Their tax returns, driver's licenses, and voter registrations all listed the Missouri address. Their source of financial support was a Missouri business. From all accounts, the husband spent over 85% of the year in Missouri. The only factor listed in Weiler that falls on the Florida side of the equation is the husband's application for a Florida homestead exemption. Our de novo review leads us to the conclusion that the parties' marital domicile was in Missouri.
The other possible basis for establishing personal jurisdiction is whether the husband resided in Florida prior to the filing of the petition. "Residence for purposes of dissolution of marriage means an actual presence in Florida coupled with an intention at that time to make Florida the residence." Gillman v. Gillman, 413 So.2d 412, 413 (Fla. 4th DCA 1982) (citing Curran v. Curran, 362 So.2d 1042, 1043 (Fla. 4th DCA 1978)), disapproved of on other grounds, Fernandez v. Fernandez, 648 So.2d 712 (Fla.1995).
"[L]egal residence consists of the concurrence of both fact and intention." Bloomfield v. City of St. Petersburg Beach, 82 So.2d 364, 368 (Fla.1955) (en banc). Maintenance of a temporary home in Florida simply does not establish Florida residence. Gillman, 413 So.2d at 413 (citing Gordon v. Gordon, 369 So.2d 421 (Fla. 3d DCA 1979)).
It is undisputed that the couple purchased the Boynton Beach property, owned a car located in Florida, owned Florida bank accounts, and the husband possessed a restricted Florida driver's license. It is also undisputed that the couple came to Florida several times each year for short periods of time.
The real factual dispute is whether the husband intended to permanently reside in Florida when he was present in the state between 2001 and 2005. In 2001, the husband signed an affidavit attesting that he was a resident of Florida. With the exception of applying for a homestead exemption, there was no evidence that the husband was a Florida resident. The application alone was insufficient to establish *650 the husband's residency in Florida.[1]
We therefore reverse the order denying the husband's motion to quash service of process and dismiss for lack of personal jurisdiction. We remand the case to the trial court to dismiss the claims within the complaint relating to anything other than the actual dissolution of the marriage and partition of the Boynton Beach property.
Reversed and Remanded.
STEVENSON and GROSS, JJ., concur.

ON MOTIONS FOR REHEARING AND CLARIFICATION
MAY, J.
The husband's motion for rehearing is granted while his motion for clarification is denied. In addition to reversing the order denying the husband's motion to dismiss for lack of personal jurisdiction, we further reverse the temporary relief order (May 16, 2007), the income deduction order (July 12, 2007), the order awarding temporary appellate attorney's fees (July 18, 2007), the two orders holding him in contempt (July 13, 2007; October 1, 2007), the two commitment orders (October 11, 23, 2007), and the amended income deduction order (October 24, 2007). The case is remanded to the trial court to vacate these orders.
STEVENSON and GROSS, JJ., concur.
NOTES
[1] It is important to note that only the application was presented to the trial court. No evidence was presented to establish that the husband actually obtained the exemption. In fact, the application specifically states that it authorizes "the property appraiser to obtain information necessary to determine" the applicant's eligibility for the exemption.